IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Darrell Williams, ) | |
| ) | Civil Action No. 2:10-2707-CMC-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Anthony J. Padula and ) | |
| Geraldine Miro, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to 42 U.S.C. § 1983. Before the court is the Defendants' Motion for Summary Judgement (Dkt. # 28) and the Plaintiff's Cross-Motion for Summary Judgment and a Hearing (Dkt. # 33).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action seeking damages for alleged civil rights violations. (Dkt. # 1.) On April 21, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 28.) On April 21, 2010, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible

consequences if he failed to adequately respond to the motion. (Dkt. # 29.) On May 11, 2011, the Plaintiff filed a response opposing the motion and a Cross-Motion for Summary Judgment and a Hearing. (Dkt. # 33.)

## FACTS PRESENTED

The Plaintiff is an inmate currently incarcerated at the Lee Correctional Institution ("LCI"). In his original Complaint, the Plaintiff alleges that his assignment to the Chesterfield Unit at the LCI and the consequential restrictions placed on his food and recreation which were not the result of a disciplinary proceeding violated his due process rights. (Compl. at 3). The Plaintiff further alleges that he was representing himself in state criminal court pursuant to *Faretta v. California*, 422 U.S. 604 (1975), and pursuant to an institutional policy he was denied sufficient access to the law library which resulted in his new trial motion being denied. *Id.* at 4. In his Amended Complaint, the Plaintiff reiterates some of the claims he set forth in his original Complaint and he also alleges that the lights in his cell were not working in July 2010 and officials ignored his complaints regarding the lights in retaliation for the Plaintiff filing various complaints regarding the prison conditions at the LCI. (Am. Compl.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without

3

more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**[1]

Initially, the undersigned notes that the Plaintiff has failed to set forth any factual allegations in his complaints against the Defendant Miro. Accordingly, the Defendant Miro should be dismissed.

**Housing Claims**

The Plaintiff alleges his placement in the Chesterfield Unit, and consequently the alleged restrictions on his meals, work privileges, and recreation time, violated his due process rights. (Compl. at 3.) Specifically, he alleges that pursuant to an institutional policy, inmates who have been found guilty of a major disciplinary charge are placed in the Chesterfield Unit even when they are not sanctioned with disciplinary detention. (Pl.'s Mem. Supp. Cross-Motion for Summ. J. at 6.) He alleges he was served two

---

[1] While the Plaintiff has included the phrase "equal protection" in his filings, he has not made any serious effort to establish or even allege such a claim. In any event, the Plaintiff has failed to demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *See Khaliq v. Angelone*, 72 Fed. Appx. 895, 898 (4th Cir. 2003). Because "[p]risoners are not a suspect class," and "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis of classification," the plaintiff must demonstrate that any unequal treatment is not rationally related to a legitimate governmental purpose. *See Moss v. Clark*, 886 F.2d 686, 690 (4th Cir.1989). The Plaintiff has made no effort to create issues of fact as to any of the elements of his equal protection claim.

4

boiled eggs and two biscuits for breakfast and a sandwich for lunch and only ate one hot meal daily in the cafeteria from November 2008 through July 2009 and that after July 2009, he has only been served two sandwiches for dinner. (*Id.* at 8; Compl. at 3.)

The Plaintiff has no protected constitutional interest to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983). In other words, the placement and assignment of inmates into particular institutions or units by state corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016–17 & n. 1 (4th Cir.1984) (collecting cases). Furthermore, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Due process does not require that a prisoner be given a hearing before a placement or classification change is ordered, even if such action might result in confinement under less desirable or favorable conditions. *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976). Furthermore, in *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court concluded that the plaintiff's "segregated confinement did not present the type of

5

atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485.

Thus, in order to show a constitutional violation with respect to his custody classification, the Plaintiff must show that his placement in the Chesterfield Unit at the LCI exceeded his original sentence or created an atypical or significant hardship in violation of a protected liberty interest. *Sandin*, 515 U.S. at 483–484. There is no such evidence in this case. *Backey v. South Carolina Dep't. of Corrections*, 73 F.3d 356 (4th Cir. Jan. 3, 1996) (Table) (allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); *Joseph v. Gillespie*, 73 F.3d 357 (4th Cir. December 21, 1995) (Table) ("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); *Reffritt v. Nixon*, 917 F.Supp. 409, 412 (E.D.Va.1996) (plaintiff has no protected interest in remaining in or being released into general population). Even assuming the Plaintiff's meals were as he alleged, the Plaintiff's confinement in the Chesterfield Unit clearly did not exceed his sentence in such an extreme way as to give rise to "atypical and significant hardships." *See Beverati v. Smith*, 120 F.3d 500 (4th Cir.1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship.).

Accordingly, the Plaintiff's claims regarding his placement in the Chesterfield Unit should be dismissed.

**Denial of Access to Courts**

The Plaintiff alleges that he was representing himself in state criminal court pursuant to *Faretta v. California*, 422 U.S. 604 (1975), and he was denied sufficient access to the law library pursuant to an unconstitutional policy which resulted in his new trial motion in state criminal proceeding being denied. (Compl. at 4.)[2]

The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id.* at 828. To state a denial of access claim, a prisoner must provide some basis for his allegation that the failure to provide access to law materials and books, mail, notary services, etc. have deprived him of meaningful access to the courts. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. The right to access the courts extends to

---

[2]The Plaintiff argues his motion to compel discovery should have been granted and that he is unable to prove his claims without a copy of certain prison policies. However, even if the policies are as the Plaintiff claims, they are not unconstitutional as discussed herein.

7

direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354–55. Furthermore, a claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

The courts have interpreted *Bounds* "to give the government the choice to provide either access to a law library or access to counsel or other appropriate legal assistance." *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir.2010). The Plaintiffs' allegations relating to the lack of access to a law library at the LCI do not raise a cognizable § 1983 claim. Longstanding case law in this circuit provides that if an inmate has an attorney - or is offered counsel but waives his or her right to counsel - he or she has no constitutional right of access to a law library or to legal materials. *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir.1978). In *Chatman*, the Court concluded that *Bounds v. Smith*, 430 U.S. 817 (1977), was not applicable to a pre-trial detainee:

> We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief . . . *Bounds*, of course, has no direct application to defendant. He was accused of a crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered the defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West*, 557 F.2d 151 (8th Cir.1977).

*3 *United States v. Chatman*, 584 F.2d at 1360 (italics in original). The rule is that [the defendant] has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up." *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000). *See also Plyler v. Leeke*, 1986 WL 84459 (D.S.C. 1986)(unpublished) (holding if an inmate "has waived counsel, either for anappeal or on any untried charges, he has no right to demand access to a law library.") Here, the Plaintiff states numerous times that he was acting as his own counsel under *Faretta* and thus he had waived counsel. (Compl. at 4; Pl.'s Cross-Motion for Summ. J. at 2. )[3]

In any event, as the Court previously noted, a plaintiff must plead and prove actual injury which here the Plaintiff has not done. Although the Plaintiff states in a conclusory fashion that his new trial motion was denied, the Plaintiff does not allege any facts which demonstrate that he had possible viable claims that simply suffered from deficiencies that could have been cured through better access to the law library. Rather, it appears that the Plaintiff is unhappy with the amount of time he was given to research.

---

[3]The validity of that waiver and whether the Plaintiff unequivocally requested to represent himself in his state court action or if he only wished to represent himself if he could have access to a law library is not an issue properly before this court. *See Tinsley v. Singleton*, 2010 WL 3282973 (D.S.C. 2010)("Moreover, to raise this arguments in the context of a section 1983 action, prior to obtaining relief on direct appeal or through the means of a post-conviction relief application and/or petition for habeas corpus, the Court believes, is improper."). To the extent the Plaintiff seeks money damages, a money judgment in his favor would necessarily imply the invalidity of Plaintiff's state criminal conviction in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994)("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Cole v. Sisto*, 2009 WL 2230795 (E.D.Cal. 2009)(holding in a 1983 action, if the court were to find that plaintiff was hampered in the assertion of his *Faretta* right to self-representation, that finding would necessarily imply the invalidity of the underlying conviction.)

The Constitution does not guarantee a prisoner unlimited access to the law library and related services. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir.1985). The undersigned also notes that the Plaintiff raised ten issues in his new trial motion (Dkt. # 36 Ex.) and his motion itself belies any injury from an alleged denial of additional time in the law library. *See Wise v. Ozmint*, 2009 WL 3232672, at *3 (D.S.C. Oct.6, 2009) (noting that plaintiff's "numerous, lengthy, and timely filings indicate that he has been given a significant amount of access to both the prison law library and mailroom" and holding that where plaintiff "fails to show some actual injury resulting from denial of access to the courts, his assertion that he has been denied access" is without merit.). Based on the foregoing, the Plaintiff's denial of access to the courts claim should be dismissed.

**Prison Conditions**

The Plaintiff alleges the conditions in his cell violated his constitutional rights. (Am. Compl.) Specifically, the Plaintiff alleges that in August 2010, he complained to Warden Padula that the light in his cell did not work. (Am Compl. At 1.) He acknowledged that an electrician was sent to repair the light and he worked for three days, but the Plaintiff states the light still did not work. *Id.* The Plaintiff alleges that the light was not fixed in retaliation for the Plaintiff having filed numerous complaints concerning the prison conditions. *Id.* at 1-2. Additionally, the Plaintiff alleges that he has received inadequate meals.

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need;

and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted). The Supreme Court has explained that the first prong is an objective one-the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"-and the second pong is subjective-the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

The Plaintiff has failed to show that his constitutional rights were violated with regard to his living conditions. He has shown no injury resulting from the alleged conditions. Further, he has failed to show that subjectively the prison officials acted with a sufficiently culpable state of mind.

Additionally, claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999).  Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a

result of the retaliatory conduct. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir.1993). Here, the Plaintiff makes only conclusory allegations that he was being retaliated against. He has failed to sufficiently allege a claim of retaliation and therefore these claims should be dismissed.

Finally, the Plaintiff's claims that his change in custody status was retaliatory are also conclusory and unsupported. Absent some evidence that the Defendants were actually aware of the Plaintiff's complaints or intent to file suit against them (of which there is none), the Plaintiff's claims fail. The Plaintiff has failed to raise a dispute of fact indicating that the any adverse act was motivated by his protected conduct. Accordingly, the Plaintiff's conditions of confinement claims should be dismissed.

**Qualified Immunity**

Having found that the Plaintiff has not raised a viable § 1983 claim, the court need not determine whether any rights the Plaintiff has asserted were "clearly established" for purposes of qualified immunity. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir.1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

## **CONCLUSION**

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgement (Dkt. # 28) be GRANTED; the Plaintiff's Cross-Motion for Summary Judgment and for a Hearing (Dkt. #33 ) be DENIED; and the Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                                     s/Bruce Howe Hendricks
                                                                     United States Magistrate Judge

August 31, 2011
Charleston, South Carolina

.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).